**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DENNIS GRESH,** | : | **CIVIL ACTION NO. 1:15-CV-1466** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **HUNTINGDON COUNTY,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Plaintiff Dennis Gresh ("Gresh") filed the above-captioned action alleging

Fourth Amendment and procedural due process claims under 42 U.S.C. § 1983 and

state law claims for assault, battery, false imprisonment, intentional infliction of

emotional distress ("IIED"), tortious interference with contract, and civil

conspiracy.  Before the court are three motions (Docs. 14, 23, 33) to dismiss for

failure to state a claim, filed by (1) Huntingdon County (the "County"), the

Huntingdon County Sheriff's Office (the "Sheriff's Office"), Sheriff William G.

Walters ("Sheriff Walters"), Chief Deputy Mark Foor ("Chief Deputy Foor"),

Sergeant Jeff Leonard ("Sergeant Leonard"), Deputy Dan McCartney ("Deputy

McCartney"), Deputy Tammy S. Foor ("Deputy Foor"), and Deputy Larry

Cressman ("Deputy Cressman") (collectively, "the Huntingdon County

defendants"); (2) the Huntingdon County Agricultural Association, Inc. (the

"Agricultural Association"); and (3) Bartlebaugh Amusements, Inc. ("Bartlebaugh

Amusements").  The motions will be granted in part and denied in part.

I.     **Factual Background & Procedural History**

Gresh is the sole proprietor of D&L Concessions, a food concession vending company.  (Doc. 1 ¶ 13).  Sheriff Walters is the elected sheriff of Huntingdon County, Pennsylvania.  (Id. ¶ 7).  At all times relevant to the complaint, Chief Deputy Foor, Sergeant Leonard, and Deputies McCartney, Foor, and Cressman were employees of the Sheriff's Office.  (Id.)  The Agricultural Association is a corporation registered in Pennsylvania that plans and operates the annual Huntingdon County Fair ("the fair").  (Id. ¶ 8).  Bartlebaugh Amusements is a Pennsylvania corporation and competitor to D&L Concessions in the concession vending business. (Id. ¶ 9).

In April 2014, Gresh contracted with the Agricultural Association for concession stand space at the August 2014 fair.  (Id. ¶¶ 14-16).  Thereafter, he engaged three young adults, Matt, Cassidy, and Zach, to staff his fair stands from August 3 to August 9, 2014.  (Id. ¶¶ 14, 17).  Gresh orally agreed to pay each employee by check at the conclusion of the fair on August 9. (Id. ¶ 18).

Soon after the fair commenced, relations between Gresh and his employees deteriorated.  Gresh believed that Matt was shirking his concession stand duties and consequently fired him on August 5, 2014. (Id. ¶¶ 20-21).  Gresh requested that Matt return to the D&L Concessions stands only to collect his pay on August 9.  (Id. ¶ 21). On August 6, Matt twice appeared at the concession stands and unsuccessfully demanded payment.  (Id. ¶¶ 22-23).  Gresh asserts that Matt then publicly "bad-mouth[ed]" D&L Concessions and claimed he was "going to have [Gresh] kicked out of the fair."  (Id.)  In what Gresh avers is a related incident on the same day, he

observed Cassidy conversing in "a secluded area" with the wife of the owner of Bartlebaugh Amusements. (<u>Id.</u> ¶ 25).

On August 7, 2014, the concession stand employment dispute culminated in a confrontation involving the Sheriff's Office. Initially, Gresh sought the assistance of the Sheriff's Office in dealing with potential further disruption by Matt. (<u>Id.</u> ¶ 26). Gresh alleges that when he arrived at the Sheriff's Office located on the fairgrounds, four to five deputies were present as Sheriff Walters "scream[ed]" at him to "get back to [his] stand" and stated, "[W]e'll deal with you later." (<u>Id.</u> ¶ 27). About an hour afterward, Sheriff Walters and three to four uniformed deputies approached Gresh's stand. (<u>Id.</u> ¶ 28). Gresh claims that Sheriff Walters "began yelling" at him and ordered the deputies to handcuff him. (<u>Id.</u>) The deputies "grabbed [Gresh] by his arm," led him to a second stand, and handcuffed him for approximately four to five minutes. (<u>Id.</u> ¶¶ 28, 30). During this time, the deputies allegedly commanded Gresh to pay Matt, Cassidy, and Zach in cash immediately and threatened to jail him for "theft by deception" if he refused. (<u>Id.</u> ¶ 28). Gresh complied, and Sheriff Walters directed him to vacate the fairgrounds. (<u>Id.</u> ¶ 29). When Gresh subsequently visited the Huntingdon County Fair office, an employee of the Agricultural Association "made a phone call" and then advised Gresh to leave the fairgrounds. (<u>Id.</u> ¶ 31).

On July 29, 2015, Gresh filed the complaint (Doc. 1) against the Huntingdon County defendants, the Agricultural Association, and Bartlebaugh Amusements. Gresh asserts against the Huntingdon County defendants Fourth Amendment and procedural due process claims under 42 U.S.C. § 1983 and state law claims for

assault, battery, false imprisonment, IIED, tortious interference with contract, and civil conspiracy.  Gresh also brings claims for conspiracy to violate his constitutional rights against the Agricultural Association and Bartlebaugh Amusements.  In three separate motions (Docs. 14, 23, 33), defendants seek dismissal of Gresh's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The motions are fully briefed and ripe for disposition.

## II.   **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' "  Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id. at

4

131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 251, but leave is broadly encouraged "when justice so requires."  FED. R. CIV. P. 15(a)(2).

## III.  **Discussion**

Defendants contend that Gresh's factual averments, even accepted as true, are insufficient to establish his entitlement to relief under Section 1983 and the Fourth and Fourteenth Amendments, and state law governing assault, battery, false

imprisonment, IIED, tortious interference with contract, and civil conspiracy.[1]  The court will address these issues *seriatim*.

## A.    Section 1983 Claims

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials.  See 42 U.S.C. § 1983.  Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights otherwise protected by federal law.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under Section 1983, plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).  The Huntingdon County defendants do not dispute Gresh's contention that Sheriff Walters and employees of the Sheriff's Office involved in the August 7 confrontation acted under color of state law.  (See Doc. 1 ¶ 11).

---

[1] In his complaint, Gresh asserts a myriad of claims without clear delineation of the intended defendants.  The Huntingdon County defendants winnow seventeen claims from the complaint.  (See Doc. 16 at 3-4).  Gresh fails to respond to defendants' arguments regarding a number of these causes of action.  He thereby waives those claims, to wit: violation of freedom to contract under 42 U.S.C. § 1981; Fourteenth Amendment equal protection and failure to train or supervise under 42 U.S.C. § 1983; conspiracy under 42 U.S.C. § 1985; malicious prosecution; abuse of process; negligence; and, negligent infliction of emotional distress.  See D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999); see also L.R. 7.6.  Furthermore, based upon the complaint and the parties' arguments, the court construes Gresh's pleading to name only Section 1983 claims for conspiracy to violate his Fourth and Fourteenth Amendment rights against the Agricultural Association and Bartlebaugh Amusements.  (See Doc. 1 ¶ 39; Doc. 24 at 3-6; Doc. 27 at 5-9; Doc. 28 at 1-3; Doc. 35 at 5-8; Doc. 36 at 5-8; Doc. 37 at 2-3).

In the case *sub judice*, Gresh alleges that defendants violated or conspired to violate his constitutional rights under the Fourth and Fourteenth Amendments. The court will address in turn Gresh's claims against the various Huntingdon County defendants, the Agricultural Association, and Bartlebaugh Amusements.

### 1. *Fourth Amendment and Procedural Due Process Claims Against Huntingdon County*

The Huntingdon County defendants argue that Gresh's Section 1983 claims against the County should be dismissed because he "has not identified any policy, practice, or custom of Huntingdon County" that caused his alleged injury.  (Doc. 16 at 17).  In response, Gresh posits that the role and conduct of Sheriff Walters adequately demonstrates the existence of a policy or custom.  (Doc. 25 at 9-12).

Municipalities and other local government entities may not be held liable in a Section 1983 suit for conduct of their employees under a theory of *respondeat superior* or vicarious liability.  Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978)); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  Municipal liability only arises when a government causes an employee to violate another's constitutional rights by an official custom or policy.  See Monell, 436 U.S. at 690-94; Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998).  A district court must review a municipal liability claim "independently of the [S]ection 1983 claims against" the individual defendants.  Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004) (internal quotation omitted).

To establish liability under <u>Monell</u>, plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and show a causal link between the execution of the policy or custom and the injury suffered. <u>Losch v. Borough of Parkesburg</u>, 736 F.2d 903, 910 (3d Cir. 1984). A policy exists "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 481 (1986)). A custom is formed when the " 'practices of state officials [are] so permanent and well settled' as to virtually constitute law." <u>Id.</u> (quoting <u>Monell</u>, 436 U.S. at 691). Plaintiff also may establish a custom by evidence of knowledge or acquiescence in a pattern of constitutional violations. <u>Fletcher v. O'Donnell</u>, 867 F.2d 791, 793 (3d Cir. 1989).

Gresh does not sufficiently plead the elements of a <u>Monell</u> claim. The complaint itself is devoid of *allegata* identifying a policy or custom. <u>See</u>, <u>e.g.</u>, <u>Santiago</u>, 629 F.3d at 135; <u>Black v. City of Harrisburg</u>, No. 1:11-CV-1912, 2013 WL 6506756, at *4 (M.D. Pa. Dec. 12, 2013) (Conner, C.J.). Gresh attempts to remedy this deficiency in his opposition brief by theorizing Sheriff Walters' "policy and practice of providing private justice in service of favored vendors" at the fair. (Doc. 25 at 11). The court need not assess Gresh's belated assertions, as "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." <u>Pennsylvania *ex rel.* Zimmerman v. PepsiCo, Inc.</u>, 836 F.2d 173, 181 (3d Cir. 1988) (quoting <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1107 (7th Cir. 1984)). The Section 1983 claims against the County will be dismissed without prejudice,

and Gresh will be provided an opportunity to correct the deficiencies noted

hereinabove.

### 2. *Fourth Amendment and Procedural Due Process Claims Against the Sheriff's Office*

According to the Huntingdon County defendants, the Sheriff's Office is not a

legal entity that may be sued separately from the County under Section 1983. (Doc.

16 at 32). Gresh maintains that the Sheriff's Office is a distinct defendant subject to

litigation. (Doc. 25 at 17-19). The Huntingdon County defendants are correct.

A county sheriff's office is considered a "sub-unit of [the] County" for the

purposes of Section 1983 litigation. Benard v. Washington Cty., 465 F. Supp. 2d 461,

470 (W.D. Pa. 2006) (quoting Open Inns, Ltd. v. Chester Cty. Sheriff's Dep't, 24 F.

Supp. 2d 410, 416 n.13 (E.D. Pa. 1998)); see also Neil v. Allegheny Cty., No. 12-0348,

2012 WL 3779182, at *1 n.1 (W.D. Pa. Aug. 31, 2012); Garcia v. Cty. of Bucks, 155 F.

Supp. 2d 259, 263 n.4 (E.D. Pa. 2001); Duffy v. Cty. of Bucks, 7 F. Supp. 2d 569, 578

(E.D. Pa. 1998). In light of its status as "merely an arm of the local municipality,"

the Sheriff's Office is not a discrete entity subject to suit in the instant case. Open

Inns, 24 F. Supp. 2d at 416 n.13. Unlike Gresh's Monell claim against the County,

his unsatisfactory pleading against the Sheriff's Office is plainly incurable. See

Fletcher-Harlee, 482 F.3d at 251. Gresh's claims against the Sheriff's Office will

therefore be dismissed with prejudice, and the Sheriff's Office will be dismissed

from this action.[2]

---

[2] Gresh has not asserted any claims against the Sheriff's Office beyond his Section 1983 claims. (See Doc. 16 at 32; Doc. 25 at 17-19).

3.   ***Fourth Amendment and Procedural Due Process Claims
Against Sheriff Walters, Sergeant Leonard, Chief Deputy
Foor, and Deputies McCartney, Foor, and Cressman***

a.   <u>**Unlawful Seizure Under the Fourth Amendment**</u>

The parties principally dispute whether Gresh's seizure constitutes a brief investigatory stop or a *de facto* arrest requiring probable cause.  The Huntingdon County defendants argue that Sheriff Walters and his deputies had reasonable suspicion to stop Gresh for a crime of theft.  (Doc. 16 at 7).  Gresh replies that defendants unlawfully exceeded a mere stop when they detained him with handcuffs and ordered him to pay his concession stand staff.  (Doc. 25 at 8-9).

The Fourth Amendment, which is made applicable to the states by the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons . . . against unreasonable" seizures.  U.S. CONST. amend. IV.  A seizure generally "must be effectuated with a warrant based on probable cause."  <u>United States v. Johnson</u>, 592 F.3d 442, 447 (3d Cir. 2010) (quoting <u>United States v. Robertson</u>, 305 F.3d 164, 167 (3d Cir. 2002)).  Pursuant to the warrant requirement exception established by <u>Terry v. Ohio</u>, 392 U.S. 1, 30-31 (1968), however, an officer who has "a reasonable, articulable suspicion that criminal activity is afoot" may initiate "a brief, investigatory stop."  <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123 (2000) (citing <u>Terry</u>, 392 U.S. at 30).  The "reasonable suspicion" standard governing <u>Terry</u> stops is less exacting than probable cause both in terms of the "quantity or content" and reliability of information needed to support the stop.  <u>Alabama v. White</u>, 496 U.S. 325, 330 (1990); <u>see</u> <u>also</u> <u>Wardlow</u>, 528 U.S. at 123.

The line between a <u>Terry</u> stop and a *de facto* arrest may be difficult to discern.  <u>See</u> <u>Johnson</u>, 592 F.3d at 447-48 (citing <u>United States v. Sharpe</u>, 470 U.S. 675, 685 (1985)).  The "reasonableness of the intrusion is the touchstone" of the inquiry, in that "the need of law enforcement officials" must be balanced against "the burden on the affected citizens." <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1192 (3d Cir. 1995).  The intrusion of an officer handcuffing an individual does not necessarily transmute the encounter into an arrest. <u>Id.</u> at 1193 (collecting cases). Nevertheless, the use of handcuffs "must be justified by the circumstances." <u>Id.</u>  An officer may employ handcuffs in the context of a stop to ensure safety or to prevent a suspect from fleeing.  <u>See</u> <u>United States v. Hensley</u>, 469 U.S. 221, 235 (1985); <u>Johnson</u>, 592 F.3d at 448.  Absent the exigencies of danger or risk of flight, the detainment is potentially tantamount to an arrest.  <u>See</u>, <u>e.g.</u>, <u>Baker</u>, 50 F.3d at 1193; <u>United States v. Butler</u>, 93 F. Supp. 3d 392, 400 (W.D. Pa. 2015); <u>Thomas v. Del. River Port Auth. (DRPA)</u>, No. 10-5514, 2011 WL 6257166, at *7 (D. N.J. Dec. 14, 2011); <u>Smith v. Hanuska</u>, No. 1:09-CV-0889, 2011 WL 995985, at *7 (M.D. Pa. Mar. 17, 2011); <u>Hall v. Raech</u>, 677 F. Supp. 2d 784, 795-96 (E.D. Pa. 2010); <u>Nelson v. Mattern</u>, 844 F. Supp. 216, 221 (E.D. Pa. 1994); <u>United States. v. Ortiz</u>, 835 F. Supp. 824, 828 (E.D. Pa. 1993).

In the matter *sub judice*, the complaint sufficiently alleges facts from which a factfinder could conclude that defendants' conduct transcended a mere <u>Terry</u> stop. According to Gresh, defendants handcuffed him immediately upon arrival at his stand.  (Doc. 1 ¶ 28).  Nothing in the complaint suggests that the intrusion was warranted on grounds of either security or risk of flight.  First, Gresh's suspected

crime, theft by deception, lacks an association with guns or violence that might put an officer on notice of the need for restraints.  See 18 PA. STAT. AND CONS. STAT. ANN. § 3922.  Moreover, the particular chronology of events leading to his confrontation with sheriff's deputies reveals only innocuous behavior by Gresh. (Doc. 1 ¶¶ 14-28).  Second, Gresh's voluntary effort to engage the Sheriff's Office before his detainment and his clear desire to remain on the fairgrounds militate against an inference that he would flee.  (Id. ¶¶ 26, 31).  Viewed in the light most favorable to Gresh, the complaint posits that the individual defendants handcuffed Gresh and threatened to jail him to induce his payment of Matt, Cassidy, and Zach, and not in response to a recognized exigency of investigatory stops.[3]  (Id. ¶¶ 28-30); cf. Hall, 677 F. Supp. 2d at 795-96; Ortiz, 835 F. Supp. at 828.

Development of the factual record may generate new considerations bearing on the court's analysis.  At this juncture, however, the court declines to find that the intrusion upon Gresh was "justified by the circumstances" of a lawful Terry stop. Baker, 50 F.3d at 1193.  Defendants do not argue that Gresh's seizure was supported by probable cause, and the court thus ends its inquiry into the reasonableness of the detainment here.

---

[3] Gresh argues that under Pennsylvania law the individual Huntingdon County defendants lack police powers beyond the ambit of "in-presence breaches of the peace and felonies."  (Doc. 25 at 7 (quoting Commonwealth v. Marconi, 64 A.3d 1036, 1043-44 (Pa. 2013)).  Gresh conflates state law standards governing sheriffs' authority and "the Fourth Amendment concept of reasonableness."  United States v. Laville, 480 F.3d 187, 192 (3d Cir. 2007).  Rather, the validity of a seizure under state law "is at most a factor that a court may consider in assessing the broader question of probable cause."  Id.; see also United States v. Sed, No. 2:07-CR-54, 2008 WL 2763697, at *5 (W.D. Pa. July 11, 2008).

Defendants also submit that dismissal is appropriate because Gresh fails to plead the personal engagement of individual defendants other than Sheriff Walters. (Doc. 16 at 30-31). Gresh broadly avers the involvement of five members of the Sheriff's Office in his seizure, and admits uncertainty as to their specific actions. (See Doc. 1 ¶¶ 7, 11, 38; Doc. 25 at 16-17). Notwithstanding some degree of provisional vagueness, "[d]iscovery will reveal the precise roles of all involved" and help to determine the propriety of each named defendant. Brownstein v. Gieda, 649 F. Supp. 2d 368, 376 (M.D. Pa. 2009). Defendants' motion to dismiss Gresh's Fourth Amendment claim will be denied.

### b.     Procedural Due Process

In addition to his Fourth Amendment claim, Gresh asserts a violation of procedural due process. (Doc. 1 ¶ 37). The Huntingdon County defendants contend that Gresh's due process and unlawful seizure claims are redundant and that the former should be dismissed. (Doc. 16 at 12-13).

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. To prevail on a Section 1983 procedural due process claim, plaintiff must demonstrate (1) that he or she was deprived of a protected liberty or property interest under the Fourteenth Amendment; and (2) that the procedures afforded him or her failed to comport with the requirements of due process. Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). However, due process analysis is inappropriate when the challenged conduct is "governed by a specific constitutional

amendment." Berg v. Cty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000); see also

Williams v. City of Phila., No. 09-4826, 2010 WL 4181873, at *5 (E.D. Pa. Oct. 22,

2010).  In particular, a court's assessment of an allegedly unconstitutional arrest is

controlled by the Fourth Amendment rather than procedural due process

jurisprudence.  See Berg, 219 F.3d at 269 (citing Cty. of Sacramento v. Lewis, 523

U.S. 833, 842-43 (1998)); Williams v. Borough of Sharon Hill, No. 12-5395, 2013 WL

6330657, at *6 (E.D. Pa. Dec. 5, 2013); Meketa v. Kamoie, 955 F. Supp. 2d 345, 365

(M.D. Pa. 2013) (citing Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 674 (M.D.

Pa. 2009) (Conner, J.)); Posey v. Swissvale Borough, No. 2:12-CV-955, 2013 WL

989953, at *15 (W.D. Pa. Mar. 13, 2013).

The gravamen of Gresh's due process claim clearly implicates the Fourth

Amendment.  Gresh asseverates that he was "handcuffed, and arrested for no

reason at all." (Doc. 25 at 8 n.2).  This statement, without more, alleges a

quintessential Fourth Amendment violation and not a distinct Fourteenth

Amendment deprivation.  Cf. Crouse, 668 F. Supp. 2d at 674.  The apparent

centrality of the August 7 confrontation to Gresh's suit suggests the difficulty he

would face in satisfactorily amending the complaint.  As difficulty is not equivalent

to futility, the court will dismiss Gresh's procedural due process claim without

prejudice.

### 4.    *Section 1983 Conspiracy Claims Against the Agricultural Association and Bartlebaugh Amusements*

Gresh maintains that the Agricultural Association and Bartlebaugh

Amusements conspired with the Huntingdon County defendants to violate his

constitutional rights.  Private parties are normally not liable under Section 1983 because they do not act "under color of" state law.  42 U.S.C. § 1983.  Nevertheless, a private party may incur Section 1983 liability when it "willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right." Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998) (citations omitted); see also Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009).  To establish the existence of a conspiracy, plaintiff must show a "meeting of the minds."  Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)).  That is, plaintiff may either "expressly allege an agreement" or aver "communication, consultation, cooperation, or command from which such an agreement can be inferred."  Luck v. Mount Airy No. 1, LLC, 901 F. Supp. 2d 547, 559 (M.D. Pa. 2012) (quoting Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992)).

Gresh fails to state a Section 1983 claim for conspiracy on the part of either the Agricultural Association or Bartlebaugh Amusements.  With respect to the Agricultural Association, Gresh alleges that its responsibilities include the "hiring, management, and/or supervision" of the Sheriff's Office.  (Doc. 1 ¶ 8).  It is clear that the Agricultural Association did not enter a conspiratorial agreement "*merely* by hiring [an instrument] of the state" for security.  Cahill *ex rel.* L.C. v. Live Nation, 512 F. App'x 227, 232-33 (3d Cir. 2013) (nonprecedential) (emphasis added) (citing Adickes, 398 U.S. at 158; Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 195 (3d Cir. 2005)); see also Gallagher v. Green, No. 12-3840, 2014 WL 4954833, at *8 (E.D. Pa. Oct. 2, 2014).  The complaint is utterly bereft of facts from which to infer such a

conspiracy.  See, e.g., Opoku v. Educ. Comm'n for Foreign Med. Graduates, 574 F. App'x 197, 201 (3d Cir. 2014) (nonprecedential); Crosby v. Harper, No. 13-4446, 2014 WL 213294, at *4 (E.D. Pa. Jan. 8, 2014).  Of nearest relevance is Gresh's claim that an Agricultural Association employee "made a phone call" when approached by Gresh after the August 7 confrontation and then informed him that he must leave the premises.  (Doc. 1 ¶ 31).  Yet Gresh does not specify what information he shared with the employee or even to whom she placed her call.  (Id.)  For the above reasons, Gresh's claim against the Agricultural Association for conspiracy under Section 1983 will be dismissed without prejudice.

Gresh's even more tenuous and conclusory allegations against Bartlebaugh Amusements also fail to state a viable claim.  Gresh avers only that Cassidy and the wife of the owner of Bartlebaugh Amusements had a private conversation during which they "conspired to have Plaintiff and D&L Concessions removed from the fairgrounds."  (Doc. 1 ¶ 25).  He draws no connection between Bartlebaugh Amusements and any state actor that would insinuate the requisite "meeting of [ ] minds."  Startzell, 533 F.3d at 205.  The court will therefore dismiss without prejudice Gresh's Section 1983 conspiracy claim against Bartlebaugh Amusements.

### B.  State Law Claims Against the Huntingdon County Defendants

#### 1.  *Assault, Battery, and False Imprisonment*

Gresh premises his assault, battery, and false imprisonment claims on allegations that he was handcuffed for several minutes and intimidated with threats to remove him to the local police precinct.  (See Doc. 1 ¶¶ 28, 42-43).  Under Pennsylvania law, the tort of assault requires that the defendant act with the intent

to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experience such apprehension. See Heverly v. Simcox, No. 4:05-1370, 2006 WL 2927262, at *9 (M.D. Pa. Oct. 11, 2006); D'Errico v. DeFazio, 763 A.2d 424, 431 n.2 (Pa. Super. Ct. 2000). Battery requires proof that the defendant acted with the intent to cause harmful or offensive contact with the person of the plaintiff and that such contact actually followed. See Fulks ex rel. Daniel v. Gasper, 439 F. Supp. 2d 372, 379 (M.D. Pa. 2006); Montgomery v. Bazaz-Sehgal, 742 A.2d 1125, 1130 (Pa. Super. Ct. 1999). Whether an officer is liable for assault and battery depends upon the "reasonableness of the force used." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994); see also Muhammad v. United States, 884 F. Supp. 2d 306, 318 (E.D. Pa. 2012).

A claim for false imprisonment requires a plaintiff to show that (1) defendant intended to confine the plaintiff; (2) defendant performed an action that directly or indirectly produced such confinement; and (3) plaintiff was either conscious of or harmed by the conduct. Gagliardi v. Lynn, 285 A.2d 109, 111 n.2 (Pa. 1971) (quoting RESTATEMENT (SECOND) OF TORTS § 35 (AM. LAW INST. 1965)); see also Kintzel v. Kleeman, 965 F. Supp. 2d 601, 608 (M.D. Pa. 2013). In the context of a seizure by a state officer, plaintiff may establish false imprisonment by proving that the detainment was unlawful. See Renk, 641 A.2d at 293.

In the instant case, the Huntingdon County defendants argue that they conducted a lawful Terry stop, thereby precluding liability for assault, battery, and false imprisonment. (Doc. 16 at 19-20). As discussed supra, the court rejects defendants' contention at this stage of the litigation. See Part III.A.3; cf.

<u>Muhammad</u>, 884 F. Supp. 2d at 319.  The motion to dismiss will therefore be denied as to the abovementioned claims.

### 2.  *Intentional Infliction of Emotional Distress*

Defendants maintain that Gresh's IIED claim must be dismissed because "no allegations . . . suggest[ ] that any Huntingdon County [d]efendant acted so outrageously as to exceed the bounds of decency tolerable to a civilized society." (Doc. 16 at 24).  To sustain an IIED claim, plaintiff must establish that (1) defendant's conduct was intentional or reckless; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct caused emotional distress; and (4) the resultant emotional distress was severe.  <u>Bruffett v. Warner Commc'ns, Inc.</u>, 692 F.2d 910, 914 (3d Cir. 1982); <u>see also</u> <u>Prukala v. Elle</u>, 11 F. Supp. 3d 443, 449-50 (M.D. Pa. 2014).  A court must be satisfied that defendant's alleged conduct is so extreme and outrageous that it "go[es] beyond all possible bounds of decency, and . . . [is] regarded as atrocious, and utterly intolerable in a civilized society."  <u>Wilkes v. State Farm Ins. Cos.</u>, No. 1:05-CV-586, 2005 WL 1667396, at *4 (M.D. Pa. July 15, 2005) (quoting <u>Baselice v. Franciscan Friars Assumption BVM Province, Inc.</u>, 879 A.2d 270, 281 (Pa. Super. Ct. 2005)).  Conduct that Pennsylvania courts have deemed sufficiently outrageous to constitute IIED includes: (1) killing plaintiff's son with an automobile and then burying the body instead of reporting the incident to the police; (2) intentionally fabricating documents that led to plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing plaintiff with a fatal disease.  <u>Hoy v. Angelone</u>, 720 A.2d 745, 754 (Pa. 1998).

The actions in which the Huntingdon County defendants allegedly engaged fall well short of the standard for extreme and outrageous behavior.  According to Gresh, defendants handcuffed him for several minutes at a public venue and coerced him to pay Matt, Cassidy, and Zach.  (Doc. 1 ¶¶ 28-30).  These grievances alone do not rise to the level of opprobrious behavior adumbrated by Pennsylvania case law.  See Hoy, 720 A.2d at 754.  Cf. Prukala, 11 F. Supp. 3d at 450; Dull v. W. Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 756 (M.D. Pa. 2009) (Conner, J.).  The court will thus dismiss without prejudice Gresh's IIED claim.

### 3.     *Tortious Interference with Contract*

The parties do not dispute that Gresh had a contract with the Agricultural Association to operate his concession stands or that the Agricultural Association instructed him to leave mid-way through the fair.  (See Doc. 1 ¶¶ 14-16, 31; Doc. 16 at 22-23).  The Huntingdon County defendants assert that Gresh fails to allege that even one of them "was actually involved in the Agricultural Association's decision to remove [Gresh] from the fairgrounds."  (Doc. 16 at 23).

Pennsylvania has adopted the standard of the Restatement (Second) of Torts § 766 to determine the elements of a tortious interference claim.  See U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914, 925 (3d Cir. 1990) (citing Adler, Barish, Daniels, Levin and Creskoff v. Epstein, 393 A.2d 1175, 1183 (Pa. 1978)).  In order to state a *prima facie* claim of tortious interference, the complaint must allege (1) that a contract existed between plaintiff and a third party; (2) action by the defendant that is deliberate and specifically intended to injure the contractual relationship; (3) "the absence of privilege or justification on the part of

the defendant;" and (4) resultant actual legal damage.  CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 384 (3d Cir. 2004) (citing Crivelli v. Gen. Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000)).

Gresh's threadbare pleading of his tortious interference claim does not suffice.  Importantly, his description of the Huntingdon County defendants' conduct includes no assertions of specific intent to harm Gresh's contract with the Agricultural Association.  See, e.g., Killian v. McCulloch, 850 F. Supp. 1239, 1252 (E.D. Pa. 1994).  Instead, in his opposition brief, Gresh proposes that Sheriff Walters knowingly induced the nonperformance of the Agricultural Association by "spreading false information" about him.  (Doc. 25 at 14-15).  The court reiterates the point that the complaint may not be amended through plaintiff's briefs.  See Zimmerman, 836 F.2d at 181.  Gresh's claim for tortious interference will be dismissed without prejudice.

### 4.    *Conspiracy*

Gresh also brings a state law claim for civil conspiracy against the Huntingdon County defendants.  Pennsylvania courts define the elements of civil conspiracy as follows: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."  Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (quoting Strickland v. Univ. of Scranton, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)).  Plaintiff must also prove defendant acted with malice or intent to injure.  See Skipworth by Williams v. Lead Indus. Ass'n, Inc., 690 A.2d

169, 174 (Pa. 1997).  To successfully plead civil conspiracy, plaintiff must allege a predicate tort.  See McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005).

The complaint does not contain factual allegations supporting an inference of civil conspiracy.  The surviving tort claims against the Huntingdon County defendants are assault, battery, and false imprisonment.  See supra Part III.B.1. Gresh argues that the Huntingdon County defendants conspired with the Agricultural Association in committing these purported violations.  (Doc. 25 at 12-13).  Similar to Gresh's failure to signal an unscrupulous agreement for his Section 1983 conspiracy claims, he has failed to allege facts that reflect a "common purpose" among defendants to assault, batter, or falsely imprison him.  Gen. Refractories, 337 F.3d at 313; cf. Dennis v. DeJong, 867 F. Supp. 2d 588, 658 (E.D. Pa. 2011); Strickland, 700 A.2d at 988.  Accordingly, the court will dismiss Gresh's civil conspiracy claim without prejudice.

## C.  Punitive Damages

As a final matter, the Huntingdon County defendants argue that Gresh's separately styled "claim" for punitive damages should be dismissed.  (Doc. 16 at 28-29).  Gresh apparently concedes that only the individual Huntingdon County defendants, sued in their individual capacities, may be liable for punitive damages. (Doc. 25 at 17 n.5); see City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Rankin v. City of Phila., 963 F. Supp. 463, 477 (E.D. Pa. 1997).  He also does not contest defendants' argument that his assertion of an independent cause of action for punitive damages is procedurally improper.  (Doc. 25 at 17 n.5); see Jefferies v. Ameriquest Mortg. Co., 543 F. Supp. 2d 368, 390 (E.D. Pa. 2008)

(collecting cases).  The court will therefore dismiss Gresh's distinct claim for punitive damages and limit his request for punitive damages (Doc. 1 ¶ 50) in accordance with the foregoing.

## IV.   Conclusion

Defendants' motions (Docs. 14, 23, 33) to dismiss will be granted in part and denied in part.  An appropriate order will issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      March 24, 2016