IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENNIS GRESH,** | : | CIVIL ACTION NO. 1:15-CV-1466 |
| Plaintiff | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | |
| **HUNTINGDON COUNTY,** *et al.*, | : | |
| | : | |
| Defendants | : | |

## **MEMORANDUM**

*Pro se* plaintiff Dennis Gresh ("Gresh") commenced this civil action against, *inter alia*, defendants Sheriff William G. Walters ("Sheriff Walters"), Chief Deputy Mark Foor ("Chief Deputy Foor"), Sergeant Jeff Leonard ("Sergeant Leonard"), Deputy Dan McCartney ("Deputy McCartney"), Deputy Tammy S. Foor ("Deputy Foor"), and Deputy Larry Cressman ("Deputy Cressman") (collectively, the "Huntingdon County defendants"). Gresh advances a claim pursuant to 42 U.S.C. § 1983 and sundry state law claims against the Huntingdon County defendants. Before the court is the Huntingdon County defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 87). The court will grant the motion in its entirety.

I.      **Factual Background and Procedural History**[1]

The material facts are set forth in the court's March 24, 2016 and November 4, 2016 memoranda addressing several defense motions to dismiss. See Gresh v. Huntingdon County, No. 1:15-CV-1466, 2016 WL 1162320, at *1-2 (M.D. Pa. Mar. 24, 2016) ("Gresh I"); Gresh v. Huntingdon County, No. 1:15-CV-1466, 2016 WL 6563664, at *1-2 (M.D. Pa. Nov. 4, 2016) ("Gresh II"). The court presumes familiarity with those decisions, and we set forth only those facts pertinent to the instant motion.

Gresh managed two concession stands during the 2014 Huntingdon County fair. (See Doc. 89 ¶¶ 2-5). Gresh hired three young adults—Matt, Cassidy, and Zach—to staff his concession stands. (Id. ¶ 2). Gresh agreed to pay each of them $500 and to provide food and lodging in exchange for their services. (Id. ¶ 3). When Gresh, Matt, Cassidy, and Zach arrived at the fair, all four of them shared a single motel room. (Id. ¶ 7). Gresh did not provide his employees free meals or drinks as promised. (Id. ¶ 8).

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. A nonmovant's failure to comply with Rule 56.1 permits a court to deem the movant's statement of material facts to be undisputed. Id.; see, e.g., Kuhn v. Capitol Pavilion, No. 1:11-CV-2017, 2012 WL 5197551, at *9 (M.D. Pa. Oct. 19, 2012) (Rambo, J.); Thomas v. United States, 558 F. Supp. 2d 553, 558-59 (M.D. Pa. 2008) (Conner, J.). Gresh did not file a response to the Huntingdon County defendants' statement of material facts as required by Local Rule 56.1. Although Gresh avers broadly that defendants' statement of facts "is riddled with false representations and outright lies," (Doc. 91), he cites no contrary evidence. As a consequence, the court deems the Huntingdon County defendants' statement of facts to be undisputed. See LOCAL RULE OF COURT 56.1.

Gresh assigned Matt and Zach to work one of the concession stands while he worked alongside Cassidy at the other. (Id. ¶ 5). The stand where Matt and Zach worked suffered low sales, and Gresh terminated Zach's employment, claiming that he had not performed sufficient work. (Id. ¶ 9). Zach asked Gresh to compensate him for his labor, but Gresh refused. (Id. ¶ 10). Zach reported Gresh's refusal to tender compensation to Sheriff Walters, whose office provided security services for the fair. (Id. ¶¶ 1, 11-12). Zach explained that, without payment, he had no way to return home. (Id. ¶¶ 12, 13).

Gresh met with Sheriff Walters on August 7, 2014, on the midway of the fairgrounds. (Id. ¶ 15). Deputy Warren Edwards provided assistance during the meeting. (Id. ¶ 17). During the meeting, Sheriff Walters told Gresh that refusal to pay Zach for his labor could result in arrest for theft of services. (Id. ¶ 16). Gresh persisted in refusing to pay Zach despite Sheriff Walters' warnings. (Id. ¶ 18). As the conversation progressed, Gresh became "irate and belligerent," and clenched his fists. (Id. ¶¶ 19-20). Gresh also raised his voice and became verbally combative. (Id. ¶ 20). Sheriff Walters and Deputy Edwards believed that Gresh posed a risk to the officers as well as others at the fair. (Id. ¶¶ 21-22). To quell the potential for further disturbance, Sheriff Walters ordered Deputy Edwards to handcuff Gresh. (Id. ¶ 23).

The Sheriff's actions were effective. Gresh immediately calmed down and agreed to pay each of his employees. (Id. ¶¶ 24-25). With the perceived threat abated, Sheriff Walters and Deputy Edwards removed Gresh's handcuffs. (See id. ¶ 26). Defendants estimate that Gresh was handcuffed for a total of approximately

3

10 seconds. (Id. ¶ 27). Gresh then paid his employees and left the fairgrounds. (Id. ¶¶ 28-29). Chief Deputy Foor and Deputy Foor were on duty at the Huntingdon County fair at the time of the incident, but had no interactions with Gresh and had no contemporaneous knowledge of the incident. (Id. ¶¶ 32-33). Sergeant Leonard, Deputy Cressman, and Deputy McCartney were not on duty when the incident occurred. (Id. ¶¶ 34-36).

Gresh filed a complaint against the Huntingdon County defendants, Huntingdon County, the Huntingdon County Sheriff's Office, the Huntingdon County Agricultural Association, Inc., and Bartlebaugh Amusements on July 29, 2015. (Doc. 1). Following Rule 12 motion practice, the court dismissed several of Gresh's claims without prejudice in Gresh I. Gresh I, 2016 WL 1162320, at *2-9. With the court's leave, Gresh filed an amended complaint on April 12, 2016. (Doc. 40). Gresh's counsel withdrew his appearance on August 9, 2016, and no other counsel has entered an appearance on Gresh's behalf. (See Doc. 61). Defendants renewed their Rule 12 motions, (see Docs. 43, 45, 47), and on November 4, 2016, the court dismissed each of Gresh's claims with prejudice except for his Fourth Amendment claim and state law claims for assault, battery, and false imprisonment against the individual Huntingdon County defendants. Gresh II, 2016 WL 6563664, at *2-3. The Huntingdon County defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 87). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Federal Rule of Civil Procedure 56(c) requires movants and nonmovants alike to support factual assertions by "citing to particular parts of materials in the record" or otherwise "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Rule 56(e) allows the court to deem undisputed any fact not properly countered by record evidence. See FED. R. CIV. P. 56(e)(2). The Local Rules of Court undergird these principles by requiring Rule 56 motions to "be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. The Local Rule also requires the party opposing summary judgment to file a responsive statement identifying genuine issues to be tried and mandates that both parties' submissions

"include reference to the parts of the record that support the statements." Id. Consistent with Federal Rule 56, the Local Rule allows a court to deem a moving party's statement to be admitted when it is not properly "controverted by the statement required to be served by the opposing party." Id.; see Thomas v. United States, 558 F. Supp. 2d 553, 558-59 (M.D. Pa. 2008). In resolving the instant motion, the court has independently considered the entire record.

### III. Discussion

The Huntingdon County defendants raise four challenges to Gresh's claims, asserting: *first*, that Gresh's federal constitutional claims and state tort claims against Chief Deputy Foor, Sergeant Leonard, and Deputies Foor, Cressman, and McCartney fail as those particular defendants were not "personally involved" in the actions giving rise to the instant dispute; *second*, that Sheriff Walters' interaction with Gresh constituted a nonactionable investigatory detention; *third*, that Sheriff Walters' use of handcuffs was permissible under the circumstances; and *fourth*, that the doctrine of qualified immunity bars Gresh's federal constitutional claim against Sheriff Walters. (Doc. 88 at 5-6). We will first address the individual Huntingdon County defendants' personal involvement before turning to Sheriff Walters' qualified immunity argument and Gresh's state law claims.

#### A. Personal Involvement

The Huntingdon County defendants aver that Chief Deputy Foor, Sergeant Leonard, and Deputies Foor, Cressman, and McCartney were not "personally involved" in the incident between Gresh, Sheriff Walters, and Deputy Edwards. To sustain a Section 1983 claim, a plaintiff must demonstrate that defendants

were personally involved in conduct giving rise to plaintiff's claims. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Plaintiffs may prove that defendants were personally involved with purportedly unconstitutional conduct by demonstrating that the defendants directed it, or had actual knowledge of the conduct and acquiesced in it. Id. (quoting Rode, 845 F.2d at 1207).

Chief Deputy Foor and Deputy Foor were on duty at the Huntingdon County fair the day of the incident, but never interacted with Gresh and were not present during the altercation between Gresh, Sheriff Walters, and Deputy Edwards. (Doc. 89 ¶¶ 32-33). Sergeant Leonard, Deputy Cressman, and Deputy McCartney were not on duty when the incident transpired. (Id. ¶¶ 34-36). The record contains no indication that these defendants directed Sheriff Walters or Deputy Edwards to confront Gresh and place him in handcuffs or otherwise participated in the incident. Gresh's federal constitutional claims against Chief Deputy Foor, Sergeant Leonard, and Deputies Foor, Cressman, and McCartney fail for want of personal involvement.

Gresh's state law tort claims against these defendants suffer the same fate. At the Rule 12 stage, Gresh broadly pled the role of the individual Huntingdon County defendants, and he "admit[ted] uncertainty as to their specific actions." Gresh I, 2016 WL 1162320, at *5. But Rule 56 demands more than speculation, and Gresh has failed to adduce *probata* to meet his *allegata*. The record indicates that the only people involved in the encounter were Sheriff Walters and Deputy Edwards. Devoid of evidence that the other Huntingdon County defendants were

7

involved in the interaction, Gresh's intentional tort claims fail. The court will enter summary judgment in favor of Chief Deputy Foor, Sergeant Leonard, and Deputies Foor, Cressman, and McCartney on all claims.

**B.     Section 1983 Claim**

Sheriff Walters asserts that his interaction with Gresh did not constitute an arrest, but was instead a "permissible investigatory detention." (Doc. 88 at 8). He contends that, because he did not violate Gresh's constitutional rights, the doctrine of qualified immunity shields him from liability. (Id. at 19-20).

Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. Pearson v. Callahan, 555 U.S. 223, 244-45 (2009). No liability will attach if a reasonable actor could have believed the challenged conduct was in compliance with settled law. Id.; see also Springer v. Henry, 435 F.3d 268, 280 (3d Cir. 2006). The doctrine cloaks government officials with "immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted), and "ensure[s] that insubstantial claims against government officials [will] be resolved prior to discovery." Pearson, 555 U.S. at 231-32 (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). The defense generally "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). The burden to establish qualified immunity rests with the defendant. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

A court evaluating a claim of qualified immunity considers two distinct inquiries: whether, based on the facts alleged, a constitutional right has been violated and, if so, whether the right was "clearly established" at the time of the alleged violation. Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (quoting Pearson, 555 U.S. at 232). A court may begin its qualified immunity analysis with either prong. See Pearson, 555 U.S. at 237. We begin and end with the first.

The Fourth Amendment permits law enforcement officers to effectuate investigatory stops of citizens without probable cause in limited circumstances. Leveto v. Lapina, 258 F.3d 156, 167 (3d Cir. 2001) (citing Terry v. Ohio, 392 U.S. 1, 19-21, 27 (1968)). Courts measure the reasonableness of an investigative stop by balancing its intrusiveness against law enforcement interests generally and the specific articulated basis for suspecting criminal activity at the time of the stop. Id. The inquiry is an objective one, meaning we must consider the circumstances without regard to a law enforcement officer's subjective intent. Graham v. Connor, 490 U.S. 386, 397 (1989) (citations omitted). The limited use of handcuffs during an investigatory stop does not automatically elevate a detention to the level of arrest. Baker v. Monroe Twp., 50 F.3d 1186, 1193 (3d Cir. 1995) (citations omitted). Nevertheless, law enforcement officers may only use handcuffs when reasonable under the circumstances. Id. The court considers an officer's use of handcuffs when considering the overall intrusiveness of a stop. Id.

In the instant matter, Sheriff Walters placed Gresh in handcuffs in direct response to his belligerence during their encounter. (Doc. 89 ¶¶ 19-23). Sheriff

Walters' decision was also motivated by a fear of potential physical violence and for the safety of himself, Deputy Edwards, and the public. (Id.) Sheriff Walters had Gresh placed in handcuffs for approximately ten seconds. (Id. ¶¶ 23-27). The record reveals nothing more than a very temporary impediment to Gresh's privacy interests, which was fully justified by Gresh's own behavior. No jury could reasonably conclude that Sheriff Walters violated Gresh's constitutional rights. We accordingly conclude that Sheriff Walters is entitled to qualified immunity from Gresh's Fourth Amendment claim. The court will enter summary judgment in favor of Sheriff Walters as to this claim.

### C. State Law Claims

Gresh's state law claims for assault, battery, and false imprisonment also concenter upon the purportedly unlawful detention. Gresh's state law claims fall under the purview of the Pennsylvania Political Subdivision Tort Claims Act ("the PSTCA") as Sheriff Walters was the Sheriff of Huntingdon County at the time of the incident. (See Doc. 89-1 ¶ 1). The PSTCA shields local agencies from tort liability to the extent that an agency's conduct does not fit within specific statutory exceptions to immunity. 42 PA. STAT. AND CONS. STAT. ANN. §§ 8541-42. The PSTCA similarly shields employees of local agencies, such as Sheriff Walters, with the same immunity so long as they do not engage in willful misconduct, which is defined as "crime, actual fraud, actual malice or actual misconduct." See id. §§ 8545, 8550.

We conclude that Sheriff Walters used only the amount of force needed to prevent Gresh from engaging in violence. Sheriff Walters removed Gresh's handcuffs as soon as the threat of violence had passed. (See Doc. 89 ¶¶ 24-27). No

10

evidence of record indicates that Sheriff Walters engaged in any willful misconduct. The court accordingly finds that Gresh's state law claims against Sheriff Walters are barred under the PSTCA. We will enter summary judgment in favor of Sheriff Walters on Gresh's state law claims.

## IV. Conclusion

The court will grant the Huntingdon County defendants' motion (Doc. 87) for summary judgment in its entirety. An appropriate order shall issue.

     /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     August 9, 2017